## KEYS *v.* THE STATE.

1. An indictment which charges that the accused was intrusted with money " for the use and benefit of " a named person, and fraudulently converted the same to his own use, is a good indictment under Penal Code, § 194, although it further charges that the conversion was " to the injury and without the consent of " the person so named, and does not in this connection allege " that any demand was made for the money."

2. An indictment alleging that the accused was by the prosecutor " intrusted with one five-dollar bill, lawful money, of the value of five dollars, . . for the use and benefit of " the prosecutor, is not open to demurrer on the ground that the trust is not sufficiently set out.

3. It is not incumbent on a trial judge, after distinctly informing the jury that the accused is charged with having committed the offense in question in the county named in the indictment, that he pleads " not guilty," and that this makes the issue to be tried, to state, in connection with each legal proposition laid down for the guidance of the jury, that it must appear that the offense was committed in that county.

4. A correct statement of law embraced in a charge to a jury is not in and of itself erroneous because the court failed in the same connection to give to the jury some other pertinent legal proposition.

5. A charge in these words : " The defendant has introduced some evidence as to his good character. That is a matter that you can consider, along with the other evidence in the case, in determining whether or not the defendant be guilty, or not guilty," was not erroneous, either because of the use of the word " some," or because the court did not more particularly instruct the jury with reference to the law of good character.

6. Evidence authorizing a finding that the accused was in a particular county intrusted with money, and that he thereafter fraudulently converted the same to his own use, is sufficient to warrant a finding that the conversion took place in that county, when there is no evidence showing that he ever left the county, or tending to establish the fact that the conversion was made beyond its limits.

7. The evidence was sufficient to warrant the verdict, and there was no error in denying a new trial.

Submitted October 17, — Decided December 19, 1900.

Indictment for larceny after trust.    Before Judge Fite.   Catoosa superior court.   August term, 1900.

*William E. Mann,* for plaintiff in error.
*Samuel P. Maddox, solicitor-general,* contra.

LEWIS, J.   The accused was indicted by the grand jury of Catoosa county for the offense of larceny after trust, the indictment charging, in substance, that the defendant, on January 6, 1898, was intrusted with one five-dollar bill, lawful money, of the value of five

dollars, by W. J. Biggers, for the use and benefit of the latter, and did on the day and year aforesaid, in the county aforesaid, fraudulently convert the said five dollars to his own use, to the injury and without the consent of Biggers, and without paying Biggers the price thereof.     This indictment was demurred to by the defendant, on the grounds that it failed to allege that any demand was made for the money, and that the trust was not specifically set out.     The demurrer was overruled by the court, and this ruling constitutes one ground of error alleged in the bill of exceptions.     The case proceeded to trial, and the 'jury returned a verdict of guilty; whereupon the accused moved for a new trial, and excepts also to the judgment of the court overruling his motion.

1. In passing upon the demurrer it appears from the record that the court construed the indictment to be based upon the Penal Code, § 194, which is in the following language:     "If any person who has been intrusted by another with any money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton or other produce, or any other article or thing of value, for the purpose of applying the same for the use or benefit of the owner or person delivering it, shall fraudulently convert the same to his own use, he shall be punished by imprisonment and labor in the penitentiary for not less than one nor longer than five years."     It seems to be contended by counsel for the accused that the indictment was based upon Penal Code, § 191, which applies to factors, commission merchants, warehousekeepers, wharfingers, wagoners, stage-drivers, or common carriers on land or water, or any other bailee, with whom any money, or any other thing of value, may be intrusted or deposited.     That section prescribes that if the bailee shall fraudulently convert property to his own use, or otherwise dispose of the same, or any part thereof, without the consent of the owner or bailor, and to his injury, and without paying to such owner or bailor, on demand, the full value or market price thereof, he shall be punished by imprisonment and labor in the penitentiary for not less than two years nor longer than seven years. It will be noted that the punishment prescribed by section 191, two to seven years in the penitentiary, is greater than that prescribed by section 194, which is only from one to five years in the penitentiary.     We do not, therefore, think that any of the class contemplated by section 194 was intended to be embraced also in section 191.     Otherwise, we would

have the novelty in our Penal Code of different grades of punishment being prescribed for the same offense. Now the criminal acts described in this indictment evidently correspond with the offense set forth in section 194. We think, therefore, the court below was clearly right in construing this indictment to be based upon the provisions of section 194; for the indictment contains almost the identical language of that section, and certainly specifically embodies its idea. It is true it further charges some words used in section 191, by alleging, in substance, that the act was to the injury and without the consent of the person named, and that it was done without paying to such person the price thereof. But the addition of these words to the facts specifically charging the crime under section 194 does not render void the indictment; for the words added, "without the consent" of the owner, etc., are mere surplusage, and we think could very properly be treated as such on the trial of the case. It was decided by this court in *Alderman* v. *State*, 57 *Ga.* 367, that "An indictment for larceny after trust, under section 4422 or 4224 of the Code [of 1873], which charges that defendant did fraudulently convert the goods entrusted to him to his own use, need not charge the same was done without the consent of the owner or bailor, and to his injury, and without paying him on demand the full value thereof; these clauses of the sections, or either of them, apply to other disposition of the goods than to the bailee's fraudulent conversion to his own use, and need only be charged and proven in such cases." There is evidently a typographical error in the figures "4224" mentioned in that decision. It should be "4424." Section 4422 referred to in the decision is embodied in section 191 of the present Penal Code. The other section mentioned, "4224," has no application to the subject, but 4424 has, and is embraced in section 194 of the Penal Code. As this indictment before us charges that the accused converted to his own use the money intrusted to him, under the above decision he is not such an offender as that the law requires a charge or proof that he did the act without the consent of the owner and to his injury, and without paying him on demand, in order to authorize his conviction.

2. As will have been seen, the indictment distinctly alleged that the accused was by Biggers intrusted with the money "for the use and benefit" of the latter. It is therefore certain that a trust of some

kind was set out, and the nature of this trust is, we think, for all practical purposes, sufficiently indicated by the averment to the effect that it was created for the use and benefit of the particular person named in the indictment. It is true it does not state in what way. the accused was to dispose of the money for the use and benefit of Biggers. In this respect it might have been made more definite, but can it be fairly said that, because of the omission to go further into detail, the accused was not sufficiently informed of the nature of the charge he was called upon to meet? We think not. If, as matter of fact, Biggers did intrust the accused with five dollars in money with which he was to do something in behalf of the depositor, and if instead of complying with the obligation thus imposed he fraudulently converted the money to his own use, did he not know well enough what the indictment meant? The code section cited above makes any person who has been intrusted by another with money or other thing of value " for the purpose of applying the same for the use or benefit of the owner," and who fraudulently converts the same to his own use, guilty of a felony. There is no material difference between intrusting one with property "for the use" of the owner and intrusting him therewith "for the purpose of applying" it to such use. So the indictment, as to the particular point now under consideration, substantially meets the requirements of the code. In *Carter* v. *State*, 53 *Ga.* 326, the indictment alleged that the accused was intrusted with certain melons "for the purpose of applying the same to the sole use and behoof of" the prosecutor. The conviction was set aside because the proof showed that the accused was not to apply *the melons themselves* to the prosecutor's use, but to *sell them* and account to him *for the proceeds*. In speaking of the indictment, however, Trippe, J., said: " We do not suppose that any indictment under this statute ever failed to define both, to wit: the article deposited and the nature of the trust. *Each of them is set forth in the one under consideration.*" The italics are ours. While the case cited did not directly involve the sufficiency of the indictment, it was incidentally in question. At any rate, the eminent jurist who delivered the opinion was evidently satisfied that the trust was clearly enough stated; and if it was in that case, it is in the present one. In the case of *Sanders* v. *State*, 86 *Ga.* 717, the indictment neither described the character of the bailee nor alleged *any purpose* for which the bailment was made.

Mr. Bishop, in his work on Statutory Crimes, discussing what allegations are necessary in indictments for larceny after trust, says: "The bailment must be averred; but, on principle, the particulars of it need not be, because it is matter of inducement, and so the mere general allegation will suffice." Further on in the same connection he says: "The gravamen of the offense is the conversion; it, therefore, must be distinctly charged. But the analogies of the indictment for embezzlement explain, that even this allegation need not be expanded beyond the statutory terms; as, for example, it is sufficient to say that the defendant did 'convert the same to his own use'." Bishop on Statutory Crimes, § 422. In 7 Enc. Pl. & Pr. 420, it is stated: "It is believed that, according to the weight of authority, the indictment need not set forth the purposes for which the property was intrusted to the defendant, nor, where he was a bailee, state the purposes of the bailment." In State *v.* Turner, 10 Wash. 94, this principle is laid down: "In a prosecution for embezzlement, an information charging the crime substantially in the terms of the statute is sufficient, without making specific allegations as to the nature of the employment or trust relation of the accused." See also State *v.* Eames, 39 La. Ann. 986. In the case of People *v.* Cobler, 108 Cal. 538, it was held: "An indictment stating that the money embezzled consisted of public funds of the county, and was received by the defendant as deputy county assessor for the use and benefit of the county, sufficiently states the manner in which the defendant received the money, and the use and purpose for which he held it." In People *v.* Hill, 3 Utah, 334, it was held: "An indictment, framed in the language of the statute, charging the embezzlement of property intrusted to the defendant 'as bailee,' without setting forth the facts and circumstances of the bailment, is sufficient." We could cite a number of authorities advancing the same idea with reference to charges of embezzlement or larceny after trust. Indeed, so far as our research has extended, the weight of authority is based upon the idea that the gravamen of the offense of larceny after trust is the fraudulent conversion of the property of another, and therein consists the crime of larceny. If this be distinctly stated, the details as to the precise nature of the trust need not be set forth in the indictment, the same being, as stated by Mr. Bishop, merely matter of inducement leading up to the main charge.

3. One ground in the motion for a new trial alleges error because the court erred in charging the jury substantially to the effect that if the defendant did not apply the money for the benefit of the owner, but, as charged in the indictment, fraudulently converted it to his own use, then he would be guilty. It was claimed that this was error, because it failed to tell the jury that the conversion should be made in Catoosa county. It appears from the charge of the court to the jury, set forth in the record, that the trial judge did specifically state what the issue between the State and the accused was. He stated as the contention of the State that "this defendant, after being intrusted by Biggers with a certain five-dollar bill, for the use and benefit of Biggers, did, *in this county*, on the 6th day of January, 1898, fraudulently convert the same to his own use." It was not necessary for the judge, especially without any request from counsel, to state, in connection with each legal proposition laid down for the guidance of the jury, that it must appear that the offense was committed in Catoosa county.

4. There are some complaints in the motion for a new trial that the court erred in the charge given, not because the language used was not correct as an abstract proposition of law and applicable to the case, but because it failed to embrace some instruction that would be proper in connection with that proposition. This court has repeatedly decided that a charge is not of itself erroneous on this ground. *McIver* v. *Ry. Co.*, 108 *Ga.* 306, and opinion of Presiding Justice Lumpkin, pp. 308–9; *Lucas* v. *State*, 110 *Ga.* 756; *Wood* v. *Collins*, 111 *Ga.* 32. By these decisions the principle is well recognized that a failure to charge a proposition of law applicable to the case can not be taken advantage of by assigning error on a charge that is abstractly correct.

5. Another ground in the motion for a new trial is that the court erred in instructing the jury in the language set forth in the fifth headnote. We do not understand that it is pretended that, as an abstract proposition of law, the instruction of the court upon the subject of good character was not correct. Under the rulings heretofore repeatedly made, as above indicated, such charge can not be considered erroneous because the court did not more particularly instruct the jury with reference to the law of good character. Nor is there anything in the criticism that he used the word "some" before the word "evidence" in his charge.

6. It is contended by counsel for the accused that the verdict is contrary to the evidence, particularly as there was a failure to prove the venue in the case, that is, that the conversion of the money intrusted to the defendant took place in the county of Catoosa. The evidence in behalf of the State is positive that the accused, within the county designated in the indictment, was intrusted with the money, and there was sufficient testimony for the jury to infer that he fraudulently converted the same to his own use.    It is true there is no positive testimony as to where this conversion took place, but there were enough facts proved for the jury to infer that it took place in the county where he was intrusted with the money. The only thing in the record to contradict this is the statement of the accused himself, which, of course, the jury had a right to credit or discredit, as they saw proper.    The defendant in his statement claimed to have carried the money to Chattanooga, Tenn., and delivered it to a person standing at or near the door of the store of the merchants to whom the owner of the fund intended it to be delivered.    The defendant did not know who this person was. The owner of the money received information that he had obtained no credit for the money by the merchants in Chattanooga, for whom he intended it.    He approached Keys on the subject, who insisted that he had delivered the money, and could prove it by one Owens, and promised to bring Owens forward at a day named and prove the delivery.    He utterly failed to ever produce this witness as promised.    His conduct to the merchants in Chattanooga, to whom he was to have delivered the money, after he was suspected of appropriating it to his own use, we do not think reflects any credit upon his integrity.    It seems he was confronted with the various clerks of the store and the proprietors, and was driven to the necessity of admitting that not one of them was the person to whom he delivered it.    We think it a legitimate inference for the jury to draw that his hope in going to the store was to find some one of the former clerks absent and out of the employment of the firm, and to this one he would claim to have made the delivery. So far as the sworn evidence in the case shows, then, there is no proof that he ever left Catoosa county until he had appropriated this money.    In Clark's Criminal Procedure, 11, it is declared that it is not always the case that the crime of embezzlement is committed where the property is appropriated.    Reference is there made to

the decision in State *v.* Bailey, 50 Ohio, 636. It was therein decided that, "if the transaction extended to different counties, the authorities generally hold that the jurisdiction of the county in which the act of conversion occurred is not exclusive;" and that court held, "that where a contract of employment was made in L. county, by which the defendant was authorized to sell goods for his employers in S. county, and to account therefor in S. county, and goods were sent, from his employer's place of business in L. county, to the defendant in S. county, and were sold in S. county by the defendant, and the proceeds converted to his own use, part in S. county and part in another State, the defendant could be prosecuted in L. county." In 10 Am. & Eng. Enc. L. (2d ed.) 1025, it is declared: "As a general rule the offense is committed, not where the property is received, but where it is converted, unless it is received with intent to fraudulently convert it. If an employee, agent, or bailee, however, refuses to account for property or money, with fraudulent intent, in the county in which it was received, or, if in that county he conceives the intent to convert the property to his own use, and has possession with such intent, the offense of embezzlement is complete, although he may actually expend or dispose of the money or property in another county."

It is a well-established principle of law that the venue of a criminal case may be shown not only by positive testimony, but also by circumstances. In *Smiley* v. *State*, 66 *Ga.* 754, it seems the proof was that the owner kept his hogs at his home in Miller county, and turned them out in the open country, calling them up at night. They were suddenly missed, and about the same time, the defendant, who lived near by, though in an adjoining county, sold them some distance away. There being no proof that the hogs ever "used" or ever were over the line, this court said that a verdict of guilty of larceny, found in the county of the owner's residence, was sustained by proof. See also *Robson* v. *State*, 83 *Ga.* 171 (8). The accused in that case was a public officer in the county of Washington. He collected money in that county from the taxpayers. His office was there; he resided there; and it was not affirmatively shown that any of the money was elsewhere after he collected it. It was there decided that venue may be proved by either circumstantial or direct evidence; and in that case it was most amply proved by the evidence in the record.

7. After a careful review of the entire testimony in the case, we think it was sufficient to warrant the verdict found by the jury, and that no error was committed by the court in overruling the motion for a new trial. The State made out a prima facie case by showing by positive testimony that the property mentioned in the indictment was intrusted by its owner to the accused, and it never reached the destination for which the owner intended it. There was no evidence that the defendant ever left Catoosa county before the appropriation of this fund. His statement to that effect, as above indicated, the jury evidently did not believe, and they had a right to discredit the same. He claimed to be able to prove a delivery of the money by a certain witness, whose presence he utterly failed to procure. It is unnecessary in this connection to go into details as to the testimony introduced on the trial. We refer above to a few of the facts developed by the testimony, with the view of answering the position which seems to be mainly relied upon by counsel for plaintiff in error in his contention that the venue of this offense was not established.

*Judgment affirmed. All the Justices concurring, except Little, J., who dissented.*